## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

### CASE NO. 3:22-cv-00075-TKW-MJF

BRITTANEY KEY,
*individually*, and *on behalf of*
*all others similarly situated*,

     Plaintiff,

v.

MIRACLE FAITH CENTER, INC,
d/b/a APOSTOLIC GLOBAL CHURCH,

     Defendant.

_____/

### PLAINTIFF'S UNOPPOSED MOTION TO CERTIFY SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Brittaney Key ("Plaintiff"), individually and on behalf of all others similarly situated (identified herein as the "Settlement Class"), respectfully requests, pursuant to Fed. R. Civ. P. 23(e), that this Court (1) conditionally approve the parties' settlement as fair, adequate and within the reasonable range of possible approval, (2) appoint Ms. Key as the class representative, (3) appoint Ms. Key's counsel as class counsel, (4) approve the parties' proposed notice program, and confirm that it is appropriate notice and satisfies due process and Rule 23, (5) set a

1

date for a final fairness hearing, and (6) set deadlines for members of the settlement class to object to or exclude themselves from the settlement.

## I.    INTRODUCTION

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, in relevant part, prohibits a person from making "any call (other than a call made for emergency purposes or made with the prior express consent for the called party) using . . . an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)-(B).

Plaintiff alleges that Defendant, Miracle Faith Center, Inc. d/b/a Apostolic Global Church ("Defendant") violated the TCPA when it called her cellular telephone number with prerecorded voice messages. Prior to the calls at issue, Plaintiff had no association with Defendant and did not provide Defendant with the requisite consent for such calls. Rather, the calls Defendant placed to Plaintiff's cellular telephone were intended to reach someone other than, and unknown to, Plaintiff.

Because Defendant allegedly delivered prerecorded voice messages to cellular telephone numbers belonging to hundreds of other persons it did not have consent to call, Plaintiff alleges that the prerecorded messages Defendant delivered to settlement class members violated 47 U.S.C. § 227(b)(1)(A)(iii). Defendant denies Plaintiff's material allegations.

Recognizing the risks of protracted litigation, the parties mediated this matter with Sarah Clasby Engel, Esq. of The Engel Firm. Through mediation, the parties reached an agreement to request approval of an all-cash, non-reversionary settlement totaling $400,000 ("Settlement"). This is an excellent result, considering the risks, burden, and expense of continued litigation.

## II.    SUMMARY OF THE SETTLEMENT

The Settlement's details are contained in the Settlement Agreement ("Agreement" or "Agr.").[1]  For ease of reference, the following summarizes the Agreement's terms:

### A.    The Settlement Class

The Class is defined as follows:

> All persons in the United States who from the four years prior to the filing of this action (1) were called on their cellular telephone number by or on behalf of Defendant; (2) using a prerecorded or artificial voice; (3) for which the Defendant lacks adequate records of express consent.

Agr. at ¶ 2.6.  The Settlement Class is estimated to include approximately 450 individuals.  *Id.* at ¶ 2.5.

### B.    Monetary Relief for Settlement Class Members

The Settlement calls for Defendant to create a non-reversionary cash settlement fund of $400,000. *Id.* at ¶ 3.3.  Each Settlement Class Member that does

---

[1]  A true and correct copy of the executed Agreement is attached hereto as Exhibit "A."

not exclude himself or herself from the Settlement is entitled to a pro-rata share of the Net Settlement Amount. *Id*. at ¶ 5.2. Each Class Member who does not submit a proper Request for Exclusion[2] by the Bar Date will be paid an Individual Award, via check, which shall be calculated by dividing the remaining portion of the Settlement Amount after deducing (i) the Approved Attorney Fees, Costs and Expenses and (ii) the Notice and Administrative Costs by the total number Settlement Class Members. *Id*. at ¶¶ 5.2-5.3. Any remaining money including unclaimed monies will be redistributed on a pro rata basis to the eligible Settlement Class Members who cashed their first check, if after administration, the redistribution is economically feasible. *See id.* at ¶ 5.4.

While it is not possible to know the precise amount of the Individual Award until Class Members, if any, submit exclusion requests, Class Counsel estimate awards to be approximately $540 per person after deductions for any Court-approved attorneys' fees and costs and the costs of notice and claims administration.

Potential Settlement Class Members will receive individual notice of the Settlement within 30 days following entry of the Preliminary Approval Order. *Id*. at ¶¶ 2.18, 7.3. If Settlement Class Members wish to object to or opt out of the settlement, they will have 40 calendar days from the Notice Date. *Id*. and *id.* at ¶ 2.3.

---

[2]  Capitalized terms not defined herein have the same meaning as they do in the Agreement.

### C.    Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release limited to the practices at issue in this TCPA class action. Specifically, they will release:

> any and all manner of accounts, actions, agreements, attorneys' fees, bills, bonds, causes of action, charges, claims, contracts, controversies, costs, covenants, damages, debts, demands, dues, executions, expenses, extents, interest, judgments, losses, liabilities, obligations, penalties, promises, reckonings, remedies, rights, suits, sums of money, trespasses, and variances, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, common law or statutory (such as any violations of the TCPA or any state or federal analogy or unfair or deceptive practices act) which they have or may have from the beginning of the world to the Effective Date arising out of or relating to the claims that are alleged in the Action (and for the avoidance of doubt, the Action and this Settlement concern claims arising out of or relating to telephone calls using pre-recorded or artificial voices to the Settlement Class Members and not any other aspect of Defendant's interactions with the Class Members).

*Id.* at ¶ 10.1.

### D.    Attorneys' Fees and Costs

Prior to the Fairness Hearing, Plaintiff will move the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund, exclusive of costs and expenses. *Id.* at ¶ 4.2.  The Settlement is not contingent on the Court's approval of attorneys' fees and costs, or their amount. *Id.*

E.    **Settlement Administration**

All costs of notice and claims administration will be paid from the Settlement Fund. The parties agree that Angeion Group ("Angeion") will administer the Settlement, subject to Court approval. *Id.* at ¶ 2.22, § VII. To protect the interests of Settlement Class Members, Angeion agreed to a hard cap of no more than $32,500 for all costs of notice and administration.

F.    **Class Notice**

Defendant will provide the Settlement Administrator a list of cellular telephone numbers identified as belonging to potential members of the Settlement Class. *Id.* at ¶ 6.1. The Settlement Administrator will perform customary practices, such as reverse lookups, to identify persons associated with the numbers and their direct mailing addresses. *See id* ¶¶ 5.3, 6.1. The Notice Program will be comprised of Direct Notice and a detailed notice on the Settlement Website. *Id.* at ¶ 7.3.

III.    **ARGUMENT**

A.    **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE, AND ADEQUATE**

1.    **Legal Standard for Preliminary Approval**

Rule 23(e) provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their early resolution of complex claims

and issues, which promotes the efficient use of judicial and private resources.
*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Swift v. BancorpSouth Bank*, No. 1:10-CV-00090-GRJ, 2016 WL 11529613, at *6 (N.D. Fla. July 15, 2016) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."), *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fla. Educ. Ass'n v. Dep't of Educ.*, No. 4-17-CV-414-RH/CAS, 2019 WL 8272779, at *2 (N.D. Fla. Nov. 4, 2019); *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007). First, the Court is required to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). Second, after class members are notified and given sufficient opportunity to object or otherwise be heard, the court determines whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

7

The preliminary fairness determination requires that a district court evaluate whether the settlement was negotiated at arm's-length, and whether it is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* Manual for Complex Litigation, § 21.632 (4th ed. 2004).  In making such determination, a district court should consider the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." Faught v. Am. Home Shield Corp., 668 F.3d 1233, 1240 (11th Cir. 2011).

The Court should grant Preliminary Approval of the Settlement because the Settlement is squarely within the range of reasonableness and satisfies all standards for Preliminary Approval.  Each of the relevant factors weigh in favor of Preliminary Approval of this Settlement.

### 2.    The Settlement is the Product of Informed, Arm's-Length Negotiations

To approve a class action settlement, a district court must determine that the settlement is fair, adequate, and reasonable and is not the result of collusion between the parties. *Bennett*, 737 F.2d at 986.  The Settlement was reached in the absence of collusion, and is the product of good faith, informed and arm's length negotiations

by competent counsel.  Class Counsel are well experienced in TCPA litigation as best demonstrated by the attached declarations. *See* Exhibits "B, C," Declarations of Class Counsel. Both Class Counsel and counsel for Defendant recommend this settlement should be preliminarily approved.  This recommendation comes only after the parties conducted a full day mediation with Sarah Clasby Engel, Esq.,[3] a neutral, experienced, third-party mediator. *See Fla. Educ. Assoc.*, 2019 WL 8272779 at *3, quoting *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of ... a highly experienced mediator[] lends further support to the absence of collusion."); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1345, 1349 (finding an absence of collusion where settlement was reached with the assistance of a well-qualified, experienced mediator).

Further, the Settlement Fund will be a non-reversionary, all-cash fund of $400,000.  Given that the Settlement Class is estimated to include approximately 450 individuals, the raw, per-potential Settlement Class member value is $888.88 ($400,000 / 450 = $888.88). This greatly exceeds the raw, per-potential settlement class member value of many analogous TCPA class action settlements. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells*

---

[3] *See* https://engel-firm.com/about-us/ (last accessed Nov. 11, 2022).

*Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member).[4]

Additionally, the settlement is expected to greatly exceed, on a per-claimant recovery basis, other recently approved TCPA class action settlements.  Indeed, Plaintiff's counsel estimates that, after deducting reasonable attorneys' fees, costs and expenses, as well as administration expenses, participating Settlement Class Members who submit valid claims will receive approximately $540 each.  Lehrman Decl. at ¶ 40. This is a fantastic result for Settlement Class Members.

The Settlement constitutes an objectively favorable result and outweighs the mere possibility of future relief after protracted litigation.

/ /

/ /

/ /

---

[4] *See also, e.g.*, *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am., N.A*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

### 3.    The Settlement Satisfies the Criteria for Preliminary Approval

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### a.    The likelihood of success at trial

"The likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005).  Where success at trial is uncertain, this factor weighs in favor of approving the settlement. *Newman v. Sun Capital, Inc.*, No. 09-cv-445, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012).

Despite the strength of her substantive claims, Plaintiff understands that Defendant argues she would not be able to maintain a class.  Defendant contends that Plaintiff's proposed class is not objectively ascertainable and that individual issues will predominate over common questions of law and fact.  Defendant relies on various district court and circuit court decisions to support its reasoning. Plaintiff disputes Defendant's defenses and arguments.  But, it is obvious that the likelihood of success is far from certain. Plaintiff would need to "run the table" and win at class certification, defeat Defendant's likely summary judgment motion, and successfully try her case against Defendant.  Even if Plaintiff prevailed, any recovery could be delayed for years by an appeal.  *Lipuma,* 406 F. Supp. 2d at 1322 (likelihood that

appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement.)

Even though Settlement Class Members may receive less than they ultimately would if they prevailed at trial, they benefit by immediately resolving the litigation and receiving some measure of recovery for their positions while foregoing the opportunity to achieve an unmitigated victory.

The Settlement avoids the unfavorable possibility that Plaintiff is unsuccessful at class certification, at summary judgment, and/or at trial. *See Ikuseghan v. Multicare Health Sys.,* No. 14-cv-05539, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) (approving TCPA settlement and explaining "[h]ad . . . the consent issue been decided against the Class, the Class would likely get nothing."). And class members will have the opportunity to receive a cash recovery. Accordingly, the first approval factor favors a finding that this settlement is "fair, reasonable and adequate."

> **b.    The range of possible recovery and the range of possible recovery at which a settlement is fair, adequate, and reasonable**

"The settlement is within the range of possible recoveries, which extends from a finding of non-liability to significant monetary and injunctive relief." *Fla. Educ. Assoc.*, 2019 WL 8272779 at *4 (internal citation omitted). In evaluating a class settlement, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar

evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*., quoting *Lipuma*, 406 F. Supp. 2d at 1323. "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Fla. Educ. Assoc.*, at *4 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)).

The Settlement benefits made available to the Settlement Class here are more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement, including but not limited to, a motion for class certification, Defendant's assertion of various legal challenges, a motion for summary judgment, trial as well as appellate review following a final judgment.

There is no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and the Settlement Class members would face absent a settlement. In addition, and described above, the per-Settlement Class member value of this Settlement far exceeds that of similar TCPA-class action settlements.

### c.    The anticipated complexity, expense, and duration of litigation

Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in

the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1298 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543.

Despite Plaintiff's confidence that the Court would certify the proposed class, she recognizes that class certification is far from automatic.  If this case proceeded to trial, the parties would continue discovery regarding class certification on the merits.  Class certification would be vigorously contested; as would likely summary judgment motions if the class were certified. Expert and evidentiary issues would be highly contested. Appeals following certification or summary judgment motions would also be likely. All of these proceedings would increase the time and expense of the case while reducing the possibility of any recovery for the class members. *See Berman v. Gen. Motors LLC*, No. 2:18-cv-14371, 2019 WL 6163798, at \*6 (S.D. Fla. Nov. 15, 2019) (finding the possibility of continued litigation that will inevitably increase the time and expense of the case and reduce the possibility of recover favors settlement).

This Settlement entirely avoids all negative outcomes for Plaintiff and the Settlement Class Members and eliminates the many years of likely litigation and expense the parties would inevitably endure.  Therefore, the anticipated complexity, expense and duration of the litigation strongly supports preliminary approval.

14

### d.    The opposition to the settlement.

As this case is at the preliminary approval stage, the time to file objections has not yet presented itself. However, Class Counsel has not received any objections to date. Lehrman Decl. at ¶ 44.  Accordingly, this factor weighs in favor of preliminary approval.

### e.    The stage of proceedings at which the settlement was achieved.

Courts also consider the progress of litigation at the time of settlement to ensure that the parties "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Fla. Educ. Assoc.*, at *4 (quoting *Lipuma*, 406 F. Supp. 2d at 1298).

Here, the parties entered into the Settlement after both sides were fully apprised of the facts, risks and obstacles of continued litigation and after a sufficient opportunity to conduct discovery. *See* Lehrman Decl. at ¶ 30. Plaintiff pursued discovery from Defendant, as well as third parties pursuant to Rule 45 subpoenas. As a result of those efforts, Defendant produced hundreds of pages of documents regarding its calling practices and dialed calls. *Id*. at ¶ 31. Plaintiff likewise responded to written discovery and produced documents, including voluminous telephone records. *Id*. at ¶ 32. In addition, Defendant has agreed to additional confirmatory discovery. *Id*. at ¶ 33.

As discussed above, the parties reached a settlement after mediating Plaintiff's claims with Sarah Clasby Engel, Esq. of The Engel Firm. Ms. Engel is an accomplished dispute resolution professional who has mediated and settled a wide range of cases including complex class action and TCPA matters. Accordingly, the Settlement is the result of fair, honest, arm's-length negotiations facilitated by an experienced mediator and in the absence of any collusion.

Considering all of the above factors, this Court should find that the settlement is "within the range of possible approval" and preliminarily approve it.

### B.    THE SETTLEMENT CLASS SATISFIES RULE 23

The parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Settlement Class and appoint Plaintiff as the Class Representative and her counsel as Class Counsel. "The validity of use of a temporary settlement class is not usually questioned." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:22 (4th ed. 2013).  The Manual for Complex Litigation, Fourth, § 21.612 (2004), explains:

> Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. (citation omitted). Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

For settlement purposes, the Settlement Class is submitted for certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). District courts maintain broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted). "[I]n ruling upon a motion for class certification, the substantive allegations contained in plaintiffs' complaint are accepted as true." *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 591 (N.D. Fla. 1998) (citation omitted).

The Settlement Class, as defined above, meets all of the applicable certification requirements.

### 1.  The members of the class are so numerous that joinder of all of them is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While Rule 23 does not identify a threshold number to establish numerosity, joinder is considered impractical when a class numbers at least forty members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (concluding that a district court did not abuse its discretion in finding that the numerosity requirement had been met where a plaintiff identified at least 31 individual class members). In the TCPA context, "[a] class of forty generally satisfies the numerosity requirement." *Savanna Grp., Inc. v. Trynex*, Inc.,

No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. Jan. 4, 2013); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (similar).

There are approximately 450 Class Members. *See* Lehrman Decl. at ¶ 39. Joinder is impracticable and the class thus easily satisfies Rule 23's numerosity requirement.

### 2. Questions of law and fact are common to the members of the class.

The element of commonality requires a court to find that "there are questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2).  To meet the commonality requirement, a plaintiff must demonstrate that the class action involves issues susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (citation omitted). Essentially, the moving party must show that the determination of the truth or falsity of a common contention will resolve an issue that is central to the validity of each of the claims in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality therefore requires "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355 (citation and quotation omitted). Notably, "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986) (citations omitted).

"Class certification is normal in litigation under § 227, because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). Here, Plaintiff asserts that the facts demonstrate that Defendant did not have consent to call her cellular telephone number using a prerecorded voice or the other Class Members. In addition, Plaintiff asserts that each Class Member suffered the same injury as a result of Defendant's calls. Accordingly, many common questions applicable to the Class exist, including:

- Did Defendant use an artificial or prerecorded voice in placing its calls?

- Were class members damaged by Defendant's calls?

- Were the calls made without the requisite prior express consent?

In the context of prerecorded messages, the absence of consent demonstrates commonality and supports certification. *See Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using a[] . . . prerecorded or artificial voice").[5] Defendant's conduct of causing prerecorded voice

---

[5] *See also Knapper v. Cox Communs., Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke."); *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *4 (E.D. Cal. July 6, 2020) ("Here, the case presents the common legal issue of whether Defendant used . . . [a] prerecorded voice message to make unsolicited calls regarding a purported debt.

messages to be sent to individuals for whom it lacked adequate evidence of express consent raises common questions, the truth or falsity of which would resolve the claims in this case in one stroke. *See Dukes*, 564 U.S. at 350.[6]

For these reasons, this Court should hold that Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

### 3.    Plaintiff's claims are typical of the claims of the members of the class she represents

Rule 23(a)(3) requires a plaintiff to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.

---

This issue is common to all putative class members and thus, the commonality requirement is met."); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) ("Core allegations require determination of a number of common questions of fact and law, including: (1) whether the soundboard/avatar files used in the calls qualify as a 'prerecorded voice' prohibited by the TCPA[.]"); *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 251 (N.D. Ill. 2014) (finding commonality where class members "received the same [non-consensual] calls offering a free cruise in exchange for a political or public opinion survey, made by or for one of the defendants, using the same artificial or prerecorded voice technology"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (finding as questions "common to the class . . . (2) whether [the defendant's] dialer delivers pre-recorded messages").

[6] See also *Lavigne v. First Cmty. Bancshares, Inc.*, No. 15-00934, 2018 WL 2694457, at *4 (D. N.M. June 5, 2018) ("Plaintiff identifies a number of common questions of law or fact: . . . . whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls. . . made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question[.]")

R. Civ. P. 23(a)(3).  The test for typicality closely resembles the commonality inquiry. *See Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir. 1996).  As the Eleventh Circuit explained, typicality involves the following:

> A class may be certified only if the claims or defenses of the representative parties are typical of the claims or defenses of the class. The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories.

*Williams,* 568 F.3d at 1356-57 (internal citations, internal quotations, and internal marks omitted).

Here, typicality is satisfied for the same reason commonality is satisfied—Defendant's conduct in transmitting prerecorded voice messages to cellular telephone numbers of individuals it did not have adequate records of express consent to call is the same as to Ms. Key as it is to other class members.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.").

21

As demonstrated above, Plaintiff's claims are typical of the Class Members. Accordingly this Court should hold that Plaintiff satisfied Rule 23(a)(3)'s typicality requirement.

### 4.    Plaintiff and her Counsel are Adequate Representatives

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The moving party must demonstrate both (1) that the movant's interests and that of his or her counsel are not antagonistic to or in substantial conflict with those of the rest of the class, and (2) that the movant and his or her counsel are generally able to adequately prosecute the action and conduct the proposed litigation." *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Plaintiff has no conflicting interests with Class Members. In fact, by investigating, filing, and vigorously pursuing this case, Plaintiff has demonstrated a desire and ability to protect class members' interests. Plaintiff has elected not to pursue solely her individual claims in this matter, but instead is prosecuting this case on behalf of individuals, like her, who have been subjected to non-consensual prerecorded voice calls to their cellular telephone  numbers. Plaintiff responded to discovery and produced voluminous records. Plaintiff also attended and participated in the parties' mediation.  Plaintiff is an adequate representative.

Plaintiff's counsel have regularly engaged in TCPA litigation and have extensive experience in consumer class action lawsuits and complex litigation. *See* Morgan Decl. at ¶¶ 6-7; Lehrman Decl. at ¶ 21. They therefore satisfy Rule 23(g).

Accordingly, Plaintiff and Class Counsel will continue to adequately represent the Class. The requirements of Rules 23(a) and 23(g) are, therefore, satisfied.

### 5.    Plaintiff satisfies Rule 23(b)(3)

A class action may be maintained under Rule 23(b)(3) if all Rule 23(a) requirements are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

For the reasons set forth below, the Rule 23(b)(3) factors are met.

### a.    The questions of law and fact common to the members of the class predominate over any questions potentially affecting only individual members.

Predominance requires that common questions of law or fact predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). To satisfy the predominance requirement, a plaintiff must demonstrate that the issues in the class action subject to generalized proof, and therefore applicable to the class as a whole, predominate over the issues subject only to individualized proof.

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997) (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). The predominance inquiry focuses upon the legal or factual questions that qualify each class member's case as a genuine controversy. *Jackson*, 130 F.3d at 1005. Indeed, predominance requires more than just the presence of common issues. The common issues must outweigh and predominate over any individualized issues involved in the litigation. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 518 (S.D. Fla. 2013).

To state a cause of action under the TCPA, a plaintiff must allege that: (1) the defendant called a cellular phone, (2) using an automated telephone dialing system or prerecorded message or artificial voice, (3) without the recipient's prior consent. *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012). Accordingly, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020).

Here, the central legal issue is whether Defendant is liable under the TCPA for the nonconsensual calls it placed to the Class members. This is sufficient to satisfy the predominance requirement for purposes of settlement. Individualized issues, such as whether Defendant had prior express consent to make the calls at issue to the Class Members, do not exist here. In short, there is insufficient evidence that members of the Settlement Class provided Defendant with prior express consent to place calls to their cellular telephone numbers. And because all of the claims at bar stem from calls to individuals for which Defendant cannot adequately show consent, issues relating to prior express consent do not bear on this matter. *See N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.").

And even if issues regarding prior express consent exist, common issues would still predominate. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("The Court agrees with the Court in *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 338 (E.D. Wis. 2012), aff'd, 704 F.3d 489 (7th Cir. 2013), that any issues relating to whether any of the recipients gave permission to receive faxes prior to transmission or whether any of the plaintiffs had an established business relationship with the defendant can be handled within the framework of a class action.").

25

       **b.**     **A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

From the outset, litigating TCPA claims as part of a class action is generally superior to litigating them in successive individual lawsuits. *See Reliable Money Order*, 281 F.R.D. at 339 ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations."); *see also Palm Beach Golf*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). This is because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, this is true because the claims of members of the proposed class are identical, they arise from the same standardized

conduct, and they result in uniform damages calculated on a per-prerecorded voice

message basis:

> The Court is persuaded that putative class members who would
> ultimately become part of the class would have little incentive to
> prosecute their claims on their own. Should individual putative class
> members choose to file claims on their own, given the potential class
> size and the relatively small amount of statutory damages for each case,
> individual litigation would not promote efficiency or reduce litigation
> costs. This is particularly so for claims that all stem from the same cause
> of action and involve common issues. Therefore, the Court finds that a
> class action is a superior method to adjudicate this matter.

*Knapper*, 329 F.R.D. at 247.[7]

Absent a class action, thousands of claims like Plaintiff's will go un-redressed.

*See Cin-Q Autos., Inc. v. Buccaneers Ltd. P'ship,* No. 8:13-cv-1592-AEP, 2022 WL

911388, at \*23 (M.D. Fla. Mar. 29, 2022) ("[H]andling this matter as a class action

would prove less difficult than handling hundreds of thousands of individual

lawsuits.")  Indeed, as the court in *Custom Hair Designs by Sandy, LLC v. Cent.*

*Payment Co., LLC* explained:

> As Judge Posner once stated, "[t]he realistic alternative to a class action
> is not 17 million individual suits, but zero individual suits, as only a
> lunatic or a fanatic sues for \$30." *Carnegie v. Household Int'l, Inc., 376*
> *F.3d 656, 661 (7th Cir. 2004)*. The same principle applies in this case.
> The amount of damages allegedly is over \$100,000 million dollars. The

---

[7] *See also Lavigne*, 2018 WL 2694457, at \*8 ("[T]he complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on approximately 30,000 separate cases.").

damages for these two plaintiffs are approximately $200.00. A class
action seems to be the superior method of challenging the actions of the
defendant. There is no other way for the plaintiffs to address CPAY's
alleged behaviors.

No. 8:17CV310, 2020 WL 639613, at *8 (D. Neb. Feb. 11, 2020).

Because Plaintiff seeks to certify a class in the context of a settlement, this
Court need not consider any possible management-related problems as it otherwise
would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for
settlement-only class certification, a district court need not inquire whether the case,
if tried, would present intractable management problems, see Fed. R. Civ. P.
23(b)(3)(D), for the proposal is that there be no trial."). Nevertheless, there are
unlikely to be any serious difficulties in the management of this case as a class action
as Defendant will provide the Settlement Administrator with documents identifying
the cellular telephone numbers to which it delivered prerecorded messages during
the proposed class period. Lehrman Decl. at ¶ 42; *see also Brown v. DirecTV, L.L.C.*,
330 F.R.D. 260, 273-74 (C.D. Cal. 2019) (certifying a TCPA class action and
discussing the use of the defendant's internal records to identify potential class
members).

Based on the above, a class action is the superior method to adjudicate this
controversy.

### C. THE PARTIES' NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS REQUIREMENTS

Pursuant to Rule 23(e) a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). This notice must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin, 41*7 U.S. 156, 173 (1974).

Here, the parties agreed to a comprehensive notice program to be administered by a well-respected third-party claims administrator, Angeion Group. Through the notice program, Angeion Group will use all reasonable efforts to provide direct mail notice to potential Settlement Class Members.

To that end, Angeion Group will use customary processes, such as performing reverse lookups for the cellular telephone numbers identified by Defendant as associated with potential Settlement Class Members to determine their most recent direct mailing addresses. To the extent necessary, Angeion Group will run address information through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Angeion Group will then send direct mail notice by postcard to potential Settlement Class Members, where possible.

Angeion Group will also establish a dedicated settlement website, through which Class Members can review relevant documents filed with this Court, review the question-and-answer notice, and opt out of the Settlement if desired. In addition, Angeion Group will establish a toll-free telephone number, through which Class members can request additional information, and have questions about the Settlement answered.

To be included in the class, a Settlement Class Member will simply need to review the materials and choose not to opt out. *See* Exhibit A at 18, 32-42. As discussed above, and as demonstrated by the documents attached hereto (*see* Exhibit A), the proposed notice program complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the Settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and exclusions, including the time and method for objecting or requesting exclusion, and that Settlement Class Members may make an appearance through counsel; (5) information regarding Plaintiff's request for her counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for receiving settlement benefits; and (7) how to make inquiries, and where to find additional information. *See* Fed. R. Civ. P. 23 (c)(2)(B); Manual For Complex Litigation § 21.312; *see also Bonoan v. Adobe, Inc.*,

No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice . . . , and the question-and-answer notice . . . which will appear on the dedicated settlement website. To reach potential class members, [the Settlement Administrator] will perform reverse look-ups of available telephone numbers to identify persons who will receive direct mail notice. [The Settlement Administrator] will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with industry standard in wrong number TCPA class actions.").

In short, the subject notice program ensures that Settlement Class Members' due process rights are amply protected. *See* Fed. R. Civ. P. 23 (c)(2)(A).

### D.   THE COURT SHOULD SET A FINAL FAIRNESS HEARING

The final step in the settlement approval process is a final fairness hearing, during which the Court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23 (e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and an order of dismissal under Rule 23(e).

Plaintiff requests that this Court set a date for a final fairness hearing, at this Court's convenience, approximately 4 months after (and at least 120 days after) it preliminarily approves the Settlement.

## IV.    CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court (1) conditionally approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible approval, (2) appoint Plaintiff as the class representative, (3) appoint Plaintiff's counsel as class counsel, (4) approve the parties' proposed notice program, and confirm that it is appropriate notice and it satisfies due process and Rule 23, (5) set a date for a final fairness hearing, and (6) set deadlines for members of the settlement class to object to or exclude themselves from the settlement.

### Local Rule 7.1(C) Certification

Pursuant to Local Rule 7.1(B), Plaintiff has conferred with Defendant, both by telephone and electronically on this motion and it is unopposed by Defendant, and the parties agree on the resolution of this motion in its entirety.

### Local Rule 7.1(F) Certification

Pursuant to Local Rule 7.1(F), undersigned counsel hereby certifies that this Motion, which was prepared using 14-point typeface, contains 7,511 words, excluding the parts of the document that are exempted by Rule 7.1(F).  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Dated:  February 1, 2023

EDWARDS POTTINGER, LLC

*/s/ Seth Lehrman*
Seth Lehrman, Esq.
Florida Bar No. 132896
Edwards Pottinger, LLC
525 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
seth@epllc.com

Max S. Morgan, Esq.*
The Weitz Firm, LLC
1515 Market Street, #1100
Philadelphia, Pennsylvania 19102
(267) 587-6240
max.morgan@theweitzfirm.com

*admitted pro hac vice*