UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO. 3:22-cv-00075-TKW-MJF

BRITTANEY KEY,
*individually*, and *on behalf of
all others similarly situated*,

    Plaintiff,

v.

MIRACLE FAITH CENTER, INC,
d/b/a APOSTOLIC GLOBAL CHURCH,

    Defendant.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiff, Brittaney Key ("Plaintiff"), with the consent of Defendant, Miracle Faith Center, Inc. d/b/a Apostolic Global Church ("Defendant") and with no opposition from Settlement Class Members or Defendant, respectfully moves this Court under Rule 23(e) for final approval of the parties' class action settlement.

**I.    INTRODUCTION**

Following over a year of contested litigation, the parties agreed to resolve this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, class action with the assistance of experienced mediator Sarah Clasby Engel, Esq. of The Engel Firm.

1

In short, Defendant will create a non-reversionary, all-cash common fund in the amount of $400,000 ("Settlement") to be distributed pro-rata to the Settlement Class Members. Each Class Member stands to receive more than $536.33.[1] This is a tremendous result in light of the risks and uncertainties associated continued litigation.

This Court preliminarily approved the Settlement on February 2, 2023. [D.E. 31.] Thereafter, the class administrator— Angeion Group, LLC ("Angeion")—sent the Court-approved notice by U.S. Mail to class members. In addition, Angeion published notice of the settlement on a dedicated website, www.KeyTCPASettlement.com. No objections were made to the Settlement at the time this Motion was filed.[2] No class members requested to be excluded from the Settlement at the time this Motion was filed. Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act ("CAFA"). In light of the Settlement's considerable benefits and the lack of opposition from Defendant or any Settlement Class Members, Plaintiff respectfully submits that this Court should finally approve the Settlement.

---

[1] This expected per-claimant recovery accounts for the expected notice and administration costs, an award of attorneys' fees, costs, and litigation expenses.

[2] The objection and exclusion deadline is May 16, 2023 [D.E. 35]. Plaintiff intends to supplement this Motion to update the Court regarding the status of objections or exclusion after the deadline.

## II. SUMMARY OF SETTLEMENT

### a. The Settlement

The Settlement resolves this matter on behalf of the following class ("Settlement Class"):

> All persons in the United States who from the four years prior to the filing of this action (1) were called on their cellular telephone number by or on behalf of Defendant; (2) using a prerecorded or artificial voice; (3) for which the Defendant lacks adequate records of express consent.

Each participating Settlement Class Member will receive an equal share from the non-reversionary, all-cash, settlement fund of $400,000 ("Settlement Fund"), after deducting the cost of notice to potential Settlement Class Members and claims administration, litigation costs and expenses, for which Plaintiff's counsel petitioned this Court (*see* D.E. No. 33), attorneys' fees calculated as a percentage of the Settlement Fund, for which Plaintiff's counsel petitioned this Court (*id.*) (collectively, "Expenses"). It is expected that each participating Settlement Class Member will receive more than $536.33.[3]

---

[3] This figure is based on the amount remaining after deductions are made for court approved attorneys' fees ($120,000), costs and litigation expense ($6,151.42), and notice and administration costs ($32,500) divided by the total number of Settlement Class Members (450). In accordance with Section 5.3 of the Settlement Agreement, Angeion will make a first distribution of approximately $536.33 to Settlement Class Members identified through Angeion's reverse lookup program. [D.E. 30-1 at 6.] Angeion will then, in accordance with Section 5.4, divide the remaining funds among Settlement Class Members that negotiated their check and

3

### b. Class Notice and Exclusion

Angeion successfully delivered notice to potential Settlement Class Members in accordance with this Court's Preliminary Approval Order [D.E. 31] and Order Extending Bar Date [D.E. 35]. *See* Declaration of Omeikiea Lorenzano ("Lorenzano Dec.") attached as Exhibit A.

#### i. *Direct Mail Notice*

After performing historic reverse telephone number look-ups on the telephone numbers belonging to potential Settlement Class Members as identified and provided by Defendant, Angeion delivered direct mail notice, via U.S. Mail, to potential Settlement Class Members, which included summary notice of the settlement. *See id.*, ¶¶ 7-23.

#### ii. *Settlement Website*

To supplement the direct mail notice program, Angeion established and maintains a website dedicated to the settlement—http://www.KeyTCPAsettlement.com/—that includes information pertinent to Settlement Class Members such as court filings, as well as answers to frequently asked questions. *Id.*, ¶¶ 24-29. Settlement Class Members were able to view notice

---

any additional Settlement Class Members who come forward, and issue a second check. [*Id.*]

documents and obtain other critical information via the settlement website. *Id.*, ¶¶ 28-29.

### iii. *Toll-Free Information Line*

Angeion established and maintains a toll-free telephone number—(888) 828-8060—for Settlement Class Members to obtain information about the Settlement. *Id.*, ¶¶ 30-33.

### iv. *Exclusion and Objection*

As of the filing of this Motion, no exclusion requests or objections have been received. *Id.*, ¶¶ 35, 37. The bar date for such requests is May 16, 2023 [D.E. 35]. Plaintiff intends to supplement this Motion after May 16, 2023 to update the Court regarding the status of objections or exclusion after the deadline, if any are received.

## III. ARGUMENT

### a. This Court should confirm its certification of the Settlement Class under Rule 23 for settlement purposes.

This Court previously certified the Settlement Class for settlement purposes. [*See* D.E. 31 at 2-3.] Because nothing has changed in the interim warranting a departure from the Court's reasoning, Plaintiff respectfully submits that this Court should confirm its certification of the Settlement Class for settlement purposes.

### b. The notice program complied with Rule 23 and due process.

Pursuant to Rule 23(e), this Court directed the Settlement Administrator to "use all relevant contact information to determine the mailing address for the Class Members, including reverse look-up and other customary practices" and, "[i]f a mailing address can be secured," to dispatch direct mail notice. [*See* D.E. 31 at 5.]

To that end, and as explained in the Lorenzano Declaration, Angeion used all reasonable efforts to provide direct notice to potential Settlement Class Members.

Angeion performed a reverse lookup process for those telephone numbers identified by Defendant to ascertain the names and postal addresses of potential Settlement Class Members. Angeion then ran name and address information through the National Change of Address system, which updates addresses for all people who submitted a change of address with the U.S. Postal Service within the past four years. Angeion then sent direct notice by postcard to potential Settlement Class Members, where possible.

Separately, Angeion established a dedicated settlement website, through which Settlement Class Members could review relevant documents, review the question-and-answer notice, and submit claims. In addition, Angeion established a toll-free telephone number so that Settlement Class Members could ask questions or obtain additional information.

The Court-approved notice and notice program here satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05 (5th Cir. 1977). Given the size of the class and the amount of the settlement, the Court-approved direct notice program was the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

### c. Final approval of the Settlement is warranted.

Consistent with the Eleventh Circuit's strong preference for settlement, courts should approve class action settlements under Rule 23 so long as they are "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994).

Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented, the settlement was negotiated at arm's length, and the relief provided is adequate (taking into account the risk of litigation, the method for processing claims, and agreements concerning attorneys' fees). Fed. R. Civ. P. 23(e)(2). In the Eleventh Circuit, the Rule 23(e) analysis includes consideration of

the holding in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), which outlined factors relevant to determining whether a settlement is fair and reasonable:

> The existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, representatives, and the substance and amount of opposition.

*Id.* at 1530 n.6 (cleaned up).

### i.   The procedural requirements are satisfied.

The procedural requirements prescribed by Rule 23(e)(2) (arm's length negotiations and adequate representation) and *Bennett* (lack of collusion) are easily satisfied here. First, there was no fraud or collusion in the settlement. To the contrary, the settlement was reached after arm's length negotiations with the assistance of a neutral, experienced, third-party mediator, Sarah Clasby Engel, Esq. Indeed, the Court previously found that the record demonstrated the Agreement occurred at arm's length with the absence of collusion. [D.E. 31 at 4.] Nothing has changed since then.

Second, the Class was adequately represented by Ms. Key and Class Counsel. Fed. R. Civ. P. 23(e)(2)(A). This requirement—distinct from the "adequacy" requirement of Rule 23(a)(4) – was added in 2018 and addresses "whether class counsel and plaintiffs had an adequate information base before negotiating and

8

entering into the settlement." *Burrow v. Forjas Taurus S.A.*, No. 16-21606, 2019 U.S. Dist. LEXIS 151734, at *23 (S.D. Fla. Sep. 6, 2019). This overlaps with the *Bennett* "stage-of- proceedings" factor. *See, e.g., Lipuma v. Am.Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (explaining that the *Bennett* "stage of proceedings" factor addresses whether the plaintiff "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement").

This factor is satisfied here. The parties entered into the Settlement after both sides were fully apprised of the facts, risks and obstacles of continued litigation and after a sufficient opportunity to conduct discovery. [*See* D.E. 30-3 at ¶¶ 30-33.] Plaintiff pursued discovery from Defendant, as well as third parties. [*Id*.] As a result of those efforts, Defendant produced hundreds of pages of documents regarding its calling practices and dialed calls, and confirmatory discovery regarding the class. [*See Id.* at ¶¶ 31, 33.] In short, Plaintiff and Class Counsel were well positioned to evaluate the benefits of the proposed Settlement versus continued litigation. *See, e.g., Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv- 01376, 2019 U.S. Dist. LEXIS 14673, at *14-15 (M.D. Fla. Jan. 29, 2019) ("Through...depositions, document production, and written discovery, Plaintiff and Class Counsel were able to" establish information base to satisfy Rule 23(a)(2) adequacy requirement); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1250 (S.D. Fla. 2016) ("stage of

9

proceedings" factor weighed in favor of approval where "the case settled two days prior to trial, Class Counsel completed substantial briefing, prepared for trial, engaged in voluminous discovery, and reviewed thousands of anticipated trial exhibits") (cleaned up).

Accordingly, both Rule 23(e)(2) procedural requirements are met.

### ii. The Rule 23 substantive factors favor approval.

As applied to the proposed Settlement, the Rule 23(e)(2)(C) factors addressing whether a settlement's terms are "adequate" favor granting final approval.

### 1. Costs, Risks, and Delay

The first factor is the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Courts have held that this factor is analogous to first four *Bennett* factors: (1) likelihood of success, (2) range of potential recovery, (3) where on the range of potential recovery the amount to which Class Members are entitled falls, and (4) duration and length of litigation. *See Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, at *19-20 (M.D. Fla. Jun. 22, 2020). Thus, "[u]nder both Rule 23 and *Bennett*, courts should estimate the potential recovery if ultimately successful versus the risks of losing outright, and determine whether the relief provided comports therewith." *Id*. (citations omitted); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (in order to assess Rule

10

23(e)(2)(C)(i), courts should "forecast the likely range of possible class wide recoveries and the likelihood of success in obtaining such results").

Here, analysis of Rule 23(e)(2)(C)(i), consistent with the *Bennett* factors, clearly favors approval of the Settlement. First, the risk of continuing litigation was significant. Despite the strength of her substantive claims, Plaintiff understands that Defendant argues she would not be able to maintain a class. Defendant contends that Plaintiff's proposed class is not objectively ascertainable and that individual issues will predominate over common questions of law and fact. Defendant relies on various district court and circuit court decisions to support its reasoning. Plaintiff disputes Defendant's defenses and arguments. But, it is obvious that the likelihood of success is far from certain. Plaintiff would need to "run the table" and win at class certification, defeat Defendant's likely summary judgment motion, and successfully try her case against Defendant. Even if Plaintiff prevailed, any recovery could be delayed for years by an appeal. *Lipuma,* 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement.)

Given this real risk of no recovery, the benefits obtained are substantial: Settlement Class Members will receive at least $536.33. Even though Settlement Class Members may receive less than they ultimately would if they prevailed at trial, they benefit by immediately resolving the litigation and receiving some measure of

recovery for their positions while foregoing the opportunity to achieve an unmitigated victory.

Further, this per-Settlement Class Member award greatly exceeds the large majority of other recently approved TCPA class action settlements. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member).[4]

Accordingly, the Rule 23(e)(2)(C)(i) factors weigh in favor of granting final approval of the proposed Settlement.

### 2. Method of Distributing Relief

The second factor is the method for "distributing relief." Fed. R. Civ. P. 23(e)(2)(C)(ii). This factor also favors approval because the method of distributing

---

[4] *See also, e.g.*, *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am., N.A*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

relief here is the direct payment method. The direct payment method has been described by courts as the "best and most effective method" for distributing relief. *See, e.g.*, *Chambers v. Together Credit Union*, No. 19-CV-00842, 2021 U.S. Dist. LEXIS 92150, at *6-7 (S.D. Ill. May 14, 2021) ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted.") Accordingly, the Rule 23(e)(2)(C)(ii) factor weighs in favor of granting final approval of the proposed Settlement.

### 3. Attorney's Fee Terms

The next factor is the "terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis and is addressed in the concurrently filed fee application, while Rule 23(e)'s concern is whether the attorneys' fees impacted the terms of the Settlement. *See Cook*, 2020 U.S. Dist. LEXIS 111956, at *24 (Rule 23(e)(2)(C)(iii) analysis "is distinct from the Rule 23(h) analysis…and instead addresses if and how the attorneys' fees impacted the [Settlement]."). Stated differently, Rule 23(h) addresses whether the attorneys' fees are independently reasonable, while Rule 23(e)(2)(C)(iii) addresses whether the attorneys' fees agreement impacts the fairness of the Settlement terms.

This factor favors settlement. First, attorneys' fees were not negotiated until after agreement on all other settlement terms. *See Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *81-82 (N.D. Ala. Jun. 25, 1999) (fee and costs agreement "between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to") (citations omitted); *Gutierrez v. Coco Baleadas Corp.*, No. 1:18-cv-2142, 2018 U.S. Dist. LEXIS 228018, at *1-2 (S.D. Fla. Aug. 30, 2018) (When "the attorneys' fees are negotiated separately and after settlement of" class member claims, "[c]ourts generally approve the settlement"). Second, the fees awarded will almost certainly have no impact on payments made to eligible Class Members—in other words, payments to Class Members will not be reduced or impacted at all irrespective of the attorneys' fees award. *See Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673, at *20 (M.D. Fla. Jan. 29, 2019) ("The fact that class member relief is not conditioned on any amount of attorneys' fees being awarded by the Court further supports the adequacy and fairness of this Settlement."); *Junior v. Infinity Ins. Co.*, 2021 U.S. Dist. LEXIS 82860 (M.D. Fla. Apr. 29, 2021) (noting that Rule

23(e)(2)(C)(iii) supported settlement because attorneys' fees would not "reduce or impact payments to Class Members").[5]

### 4. Equitable Treatment

The final factor is whether the proposed settlement treats class members equitably vis-à-vis each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, there is no distinction between the benefits offered, and all the Settlement Class Members receive an identical settlement payment. *See Cook,* 2020 U.S. Dist. LEXIS 111956, at *24 (finding that Rule 23(e)(2)(D) favored settlement because "Settlement Class Members are treated identically insofar as it relates to Notice, . . . damages, and all other material ways."). *See also In re Checking Account Overdraft Litig., MDL No. 2036, 2013 U.S. Dist. LEXIS 190560* (S.D. Fla. Aug. 5, 2013) (approving settlement providing for pro rata distribution of settlement fund)*; Cifuentes v. Regions Bank, No. 11-cv-23455, 2014 U.S. Dist. LEXIS 37458* (S.D. Fla. Mar. 20, 2014) (same). Moreover, the scope of the release is narrow and is tailored to the precise claims for which Defendant is providing relief, [D.E. 30-1 at 12] (defining Released Claims) and it is identical as to all Settlement Class Members. *See* Rule 23(e)(2)(D), Committee Notes on Rules – 2018 Amendment (instructing courts evaluating Rule

---

[5] Rule 23(e)(2)(C) also requires the Parties to identify any other agreements made concerning the Settlement not set forth in the proposed Settlement Agreement. No such agreement have been made here.

23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways").

The Release applies identically to all Settlement Class Members. *See McWhorter v. Ocwen Loan Servicing*, No. 2:15-cv-01831, 2019 U.S. Dist. LEXIS 232149, at *33-34 (noting that critical to Rule 23(e)(2)(D) is whether the release in practice is equitable concerning class members). Importantly, there is no general release of claims against Defendant, the Release is limited to the claim for which recovery is provided. *See Burrow*, 2019 U.S. Dist. LEXIS 151734, at *29-30 (holding that Rule 23(e)(2)(D) favored approval because "[t]he Settlement contemplates a release specific to the subject matter addressed in this Action...and does not contemplate a general release of any and all claims [] against these Defendants."). This factor favors approval.

### iii. The remaining *Bennet* favors favor approval.

As set forth above, the first four *Bennett* factors are subsumed within the textual Rule 23(e) factors. The two remaining factors not subsumed within Rule 23—opposition to the settlement and the opinions of the class counsel and representative—also favor approval of the Settlement. First, as of the filing of this Motion, not a single Class Member has lodged an objection. *See* Lorenzano Dec. at ¶ 35. This lack of any opposition is strong evidence that the Settlement terms are fair, adequate, and reasonable. *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237,

1252 (S.D. Fla. 2016) (only one objection indicates strong satisfaction with settlement).

Second, it is the opinion of Class Counsel, experienced in complex class action litigation and TCPA litigation, as well as Plaintiff, that settlement is in the interest of the Class, and eliminates the risk of proceeding with this litigation. [*See* D.E. 30-2 at ¶¶ 25-27.] Based on their evaluation, Plaintiff and Class Counsel have determined that the terms and conditions of the Settlement Agreement are fair, reasonable, and in the best interests of the Settlement Class. See *Junior*, 2021 U.S. Dist. LEXIS 82860, at *10 (finding, inter alia, that "the opinions by Class Counsel, who are experienced class action litigators, that the Settlement is in the best interests of the Settlement Class Members supports approval of the Settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").

## IV.   CONCLUSION

Plaintiff respectfully requests, with the agreement of Defendant, that this Court enter the accompanying proposed Final Judgement and Order of Dismissal.

## Local Rule 7.1(C) Certification

Plaintiff has conferred with Defendant, both by telephone and electronically on this motion and it is unopposed by Defendant, and the parties agree on the resolution of this motion in its entirety.

## Local Rule 7.1(F) Certification

Pursuant to Local Rule 7.1(F), undersigned counsel hereby certifies that this Motion, which was prepared using 14-point typeface, contains 3,590 words, excluding the parts of the document that are exempted by Rule 7.1(F).  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Dated:  May 3, 2023                                   **EDWARDS POTTINGER, LLC**

*s/ Seth Lehrman*
Seth Lehrman, Esq.
Florida Bar No. 132896
Edwards Pottinger LLC
525 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
seth@epllc.com

*s/ Max S. Morgan*
Max S. Morgan, Esq.*
The Weitz Firm, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
(267) 587-6240
max.morgan@theweitzfirm.com

*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 3, 2023, the foregoing was filed electronically and served on counsel of record using CM/ECF.

/s/ *Seth Lehrman*
Seth Lehrman, Esq